Ronald Nestor BEACH, Jr.; and Crystal Michelle Beach, a minor, by Ronald Nestor Beach, Jr., her Guardian ad Litem, Plaintiffs,

v.

William French SMITH, in his official capacity as head of The United States Department of Justice, Defendant.

Civ. No. 81–830–T.

United States District Court, S. D. California.

March 26, 1982.

prevent escape and the greater right to use force "to counter force" when "effectuating an arrest."

Michael J. Imhoff of Wampler, Holzmann, Imhoff & Stone, San Diego, Cal., for plaintiffs.

Catherine Coleman, Dept. of Justice, Washington, D. C., William Kennedy, U. S. Atty., San Diego, Cal., for defendant.

## OPINION

TURRENTINE, Chief Judge.

This matter comes before the court on defendant's motion to dismiss or in the alternative for summary judgment. The claim arises from the kidnaping of Crystal Beach by her non-custodial parent and the subsequent refusal of the Department of Justice to issue a warrant for the kidnapers under the Fugitive Felon Act, 18 U.S.C. § 1073 (1976). The Parental Kidnaping Prevention Act of 1980, Pub.L. 96–611, 94 Stat. 3568, 96th Cong.2d Sess. (1980), provides that such warrants are available in cases involving parental kidnaping and unlawful flight to avoid prosecution under state felony laws. The plaintiffs seek review of the Department of Justice's guidelines for the issuance of such warrants and an order compelling the Department of Justice to issue such a warrant in the instant case.

The facts are not in dispute. Ronald and Marian Beach were in the process of dissolving their marriage in the Superior Court of the County of San Diego, Case No. D147–231. On January 11, 1980 the Superior Court granted temporary custody of their three-year old child, Crystal, to her father, Ronald Beach (the court awarded permanent custody of Crystal to Mr. Beach on August 8, 1980). On January 29, 1980 Crystal was kidnaped from the home of her paternal grandparents by Marian Beach, her mother, and Marion Neal, her maternal grandfather. During the course of the kid-

naping Crystal's paternal grandmother, the elder Mrs. Beach, was struck and threatened by Mr. Neal. The kidnapers fled to Texas.

On February 8, 1980 the San Diego County District Attorney filed a complaint against Marion Neal and Marian Beach, charging felony parental child stealing, felony burglary and battery. Arrest warrants were issued at the same time and the State of California issued a governor's warrant for extradition. The Texas authorities failed to apprehend Marian Beach and her father. They subsequently fled to New Mexico. Their present location is unknown.

The San Diego County District Attorney applied to the United States Attorney in San Diego for a federal warrant under the Fugitive Felon Act as provided for in the Parental Kidnaping Prevention Act of 1980 (hereinafter the 'Act'). The United States Attorney denied this application because it failed to meet the requirements of the Department of Justice guidelines for the issuance of such warrants; these guidelines require independent and credible information that the child is in a condition of abuse or neglect. *Attorney General's Manual*, 9–69, 421 (June 1981).

On April 8, 1981 Mr. Beach obtained a report from a clinical psychologist which stated that the circumstances of Crystal's abduction had caused her psychological injury. A second application for a warrant under the Fugitive Felon Act was approved by the United States Attorney in San Diego and forwarded to Washington for final approval. In a letter dated August 4, 1981 the Assistant Attorney General for the Criminal Division denied the application. Mr. Beach then brought this action on behalf of himself and his daughter as her guardian *ad litem*.

■ The threshold inquiry is whether the plaintiffs have standing to challenge the decision by the Department of Justice and the guidelines under which that decision was made. Standing requires that the plaintiffs show an injury and a "logical nexus" between that injury and the governmental action which they seek to challenge.

*Linda R. S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973).

■ Plaintiffs assert two separate injuries: the denial of a federal remedy established by the Act and Crystal's abduction. These characterizations of plaintiffs' injuries are incorrect. The first alleged injury—the denial of a federal remedy—asserts the right to seek an arrest warrant under Section 10 of the Act. That section provides in pertinent part:

> In view of the findings of the Congress and the purposes of sections 6 to 10 of the Act set forth in section 302 the Congress hereby expressly declares its intent that section 1073 of title 18, United States Code, apply to cases involving parental kidnaping and interstate or international flight to avoid prosecution under applicable State felony statutes.

The Fugitive Felon Act, 18 U.S.C. § 1073 (1976), is a jurisdictional device to permit federal officers to search for state felons. Warrants are issued at the request of state law enforcement personnel to assist them in apprehending fugitives. Section 10 of the Act corrects the Department of Justice's misinterpretation of Congressional intent by extending the application of the Fugitive Felon Act to cases of parental kidnaping. *H.R.Rep.* 96–1401, 96th Cong.2d Sess. 6 (1980). Neither the statute nor the conference report evince an intent to radically alter the nature of the relief available under the Fugitive Felon Act by allowing private individuals to seek a federal criminal warrant. In fact, in a parallel provision, Section 9 of the Act, the dissemination of the information made available by the Social Security Administration through the "parental locator service" was expressly limited to state and federal officers. Thus, the plaintiffs have failed to establish any special right to the issuance of a warrant under the Act, they are simply members of the general class protected by the statute.

As members of this general class, the refusal, to issue a warrant, does not result in an injury separate from the injury caused by the underlying criminal act.

*Leeke v. Timmerman,* —— U.S. ——, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981). In *Leeke* state prisoners alleged that their guards beat them unnecessarily after a riot and sought an arrest warrant from a state magistrate. The state solicitor and the prison warden interceded with the magistrate to prevent the warrants from being issued. The Supreme Court rejected the lower courts' and dissentors' characterization of the injury as a "denial of access to the courts" due to their right to seek an arrest warrant. *Id.* at ——, 102 S.Ct. at 72. Instead the Court identified the prisoners' injury as the alleged beatings. *Id.* In the present case the plaintiffs' injury is not the denial of a federal remedy, their injury is the violation of the custody order due to the kidnaping. Mr. Beach's injury is the violation of his legal right to custody of Crystal as established by the court order. Crystal Beach's injury is her kidnaping and the denial of the custody of her court-appointed custodial parent. For the purposes of this analysis of standing these injuries may be treated as the same.

To establish standing to raise their claims the plaintiffs must demonstrate a "logical nexus" between their injury and the governmental actions which they challenge. The plaintiffs challenge two different governmental actions: the refusal to issue a warrant in their case and the promulgation of the guidelines by the Department of Justice upon which the decision was made. They have failed to establish this nexus in regard to either of these actions. The Supreme Court has considered the issue of third party standing in criminal proceedings in two recent cases. Both cases emphasized the necessity for a direct connection between the alleged injury and the remedy sought. *Linda R. S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Leeke v. Timmerman,* —— U.S. ——, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981).

The *Leeke* case is particularly apt since it dealt with standing to seek arrest warrants. The Court found that the prisoners failed to show a logical nexus between their injuries—alleged beatings by prison guards—and the challenged governmental action-intervention by the state solicitor and the prison warden with the state magistrate to prevent the issuance of arrest warrants. The Court analyzed the issue by showing that, even if the warrants were issued, the relief would not remedy the prisoners' alleged injury. The issuance of the warrants was simply a prelude to the prosecution of the guards. The decision to prosecute was still wholly within the discretion of the prosecutor.

The issue of prosecutorial discretion does not arise in the present case. The government admits that prosecutions under the Fugitive Felon Act are rare. The Fugitive Felon Act is a jurisdictional device to allow federal officers to search for fugitives from state proceedings. Upon apprehension the fugitives are turned over to local authorities for extradition and the federal charges are dismissed. Nonetheless, like *Leeke* the issuance of a warrant under the Fugitive Felon Act would only serve as a 'prelude' to the relief sought by the plaintiffs, the return of Crystal to her father's custody.

A warrant issued for Marian Beach and Marion Neal could only bring about the return of Crystal to her father indirectly. The warrant, by its terms, seeks only Marian Beach and Marion Neal, not Crystal Beach. Once the two fugitives are apprehended the warrant does not obligate the federal officers to continue to search for Crystal Beach. Thus, if Crystal is not with her mother or maternal grandfather upon their apprehension the issuance of the warrant will have no effect upon her return. Even if Crystal is with her mother and maternal grandfather upon their apprehension the warrant does not require the federal officers to turn her over to local authorities or return her to California. Crystal could be turned over to the care of neighbors or relatives. In fact, even if she is turned over to the local authorities they are not required to give full faith and credit to the custody order unless the jurisdictional and other requirements of the Act are met. Parental Kidnaping Prevention Act of 1980, Pub.L. 96–611, § 8, 94 Stat. 3569 (1980) (to be codified at 28 U.S.C. § 1738A). Thus, the effect of the issuance of the warrant for Marian Beach and her father upon the return of Crystal to her father is wholly

speculative. Plaintiffs have failed to establish the necessary "direct" relationship between the violation of the custody order and the refusal to issue the warrant.

█ Plaintiffs have also sought review of the guidelines employed by the Department of Justice in issuing warrants in parental kidnaping cases. For standing to assert this claim they allege, as injury, the denial of a federal remedy as established in the Act. The court has already found that this characterization of plaintiffs' injury is incorrect. No logical nexus exists between plaintiffs' actual injury—the violation of the custody order—and the Department of Justice's promulgation of these guidelines. A modification of these guidelines is even less likely to remedy plaintiffs' injury than the issuance of a warrant and the court has found that the issuance of a warrant is insufficiently related to the plaintiffs' injury to sustain standing. Thus, once again, the plaintiffs have failed to establish standing to assert their claim.

Accordingly, IT IS ORDERED, that the motion to dismiss the complaint for lack of standing should be and hereby is granted.